IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 7, 2017

**TIMOTHY BAXTER v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**No. C-14-223, C-15-22     Donald H. Allen, Judge**

_____

**No. W2016-00563-CCA-R3-PC**

_____

Petitioner, Timothy Baxter, appeals the dismissal of his petition for post-conviction relief in which he alleged ineffective assistance of counsel at trial where he was convicted of felony failure to appear. More specifically, he contends that trial counsel failed to subpoena witnesses requested by Petitioner, did not present evidence that the circuit court clerk's office failed to issue a criminal summons after his failure to appear, and trial counsel allowed himself to be intimidated by the trial court. After a thorough review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, J., joined. J. ROSS DYER, J., not participating.

George Morton Googe, District Public Defender; Gregory D. Gookin, Assistant Public Defender, Jackson, Tennessee, for the appellant, Timothy Baxter.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; James G. Woodall, District Attorney General; and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Background*

In its opinion on direct appeal, a panel of this court summarized the facts underlying Petitioner's convictions as follows:

At trial, evidence showed that the defendant was charged with aggravated assault, that at arraignment he had been appointed counsel, and that he was on bond prior to the scheduled June 13, 2011 court

appearance. The administrative assistant to Circuit Court Judge Roy Morgan, Judge Morgan's court reporter, and an assistant district attorney general all testified that they appeared in court for the defendant's arraignment on May 9[,] and for his scheduled court date of June 13, that the defendant appeared on May 9 but did not appear on June 13, and that after counsel was appointed on May 9[,] the court instructed the defendant to return to court on June 13, 2011. A capias for the defendant's arrest was issued on June 13, 2011. Generally, the witnesses remembered the defendant and recognized him at trial. The circuit court clerk made court calendars available to the public by placing a supply at the front desk of the clerk's office.

The court reporter introduced into evidence a transcript "of the arraignment of [the defendant] on May the 9th, 2011." She said she certified the transcript and exhibited it to her testimony. The transcript, as read in court by the reporter, showed that the defendant was sworn, that the court appointed the public defender to represent him, that counsel entered a not guilty plea for the defendant, and that counsel suggested June 13, 2011, as the next court date. The judge instructed the defendant to "[b]e back here then and keep in contact with your attorney." The reporter testified that the defendant's arraignment was typical of any arraignment.

The same court reporter also prepared a transcript of the court proceedings in Judge Morgan's court on June 13, 2011. The court admitted the transcript into evidence over the defendant's objection that it contained hearsay statements. In the transcript, Judge Morgan said that the defendant had "dealt with us before. He knows the timing." In the transcript of the June 13, 2011 proceeding, which began per the court's practice at 8:00 a.m., Judge Morgan called the case, and when the defendant did not answer, the judge said, "I'm going to hold that one aside, then." After conducting some other court business, the judge called the defendant's case again, and when he did not respond, the judge said, "[C]apias issued. . . . It's nine-fifteen. No show. Bond forfeiture commence. That concludes the arraignment list." The defendant's counsel then asked the court for the opportunity to call the defendant, stating, "I expected him to be here today." The judge mentioned that the defendant's co-defendant also did not appear and said, "I don't mind you trying to call him. He needs to get here. We'll note a capias. He's dealt with us before. He knows the timing."

The defendant testified and acknowledged his appearance at the arraignment on May 9, 2011. He said that, after the court appointed the

- 2 -

public defender to represent him, the judge told him to step aside. He testified that the assistant public defender "pulled [him] aside and [sat him] down" and elicited "a couple minutes worth" of contact information from him. He said he had no further communication from the judge. He denied that he heard the court express a return court date. He said he scheduled an appointment with the assistant public defender and went to her office on June 10, 2011. The assistant public defender tendered a plea agreement, but the defendant told her, "I'm not taking a plea agreement. I want to go to trial. I'm innocent." The defendant testified that he asked for "discovery materials," prompting counsel to respond, "Well I'm going Monday to try to get that. . . ." The trial court then sustained the prosecutor's objection to this statement as hearsay. The defendant maintained that he had never before missed a court date and that he intended to contest the aggravated assault charge.

On cross-examination, the defendant testified that he did not know he was obliged to appear in court on June 13 because he was "sitting at a table, talking with the lady from the public defender's office." He denied that he was standing at the podium when the judge communicated the next court date, opining that the judge "might have given the court date to the public defender but it wasn't to me." He stated that he believed his counsel would inform him of his next appearance date. He agreed that he was charged with aggravated assault and was not in court on June 13, 2011. Upon further cross-examination, the defendant acknowledged prior convictions of possession of a weapon by a convicted felon, manufacturing methamphetamine, and theft.

*State v. Timothy Aaron Baxter*, No. W2012-02555-CCA-R3CD, 2014 WL 29102, at *1-2 (Tenn. Crim. App. Jan. 3, 2014).

**Post-Conviction Hearing**

Kathy Blount is the Circuit Court Clerk of Madison County. She testified that when a defendant in circuit court fails to appear in court on a specific date, the judge orders a capias to be issued by the clerk's office. The capias is then sent to the sheriff's office, and they search for the defendant. Once the defendant is located, he or she is taken into custody and appears before the judge who ordered the capias. Ms. Blount noted that if the defendant is out on bond, a scire facias is issued and sent to the bonding company. She said that the bonding company has 180 days to find the defendant and bring him or her before the court. Ms. Blount testified that when a defendant is out on bond and indicted by the grand jury, before the arraignment, the clerk's office sends a "courtesy letter" to remind them to appear. The letter is not required by statute. Ms.

Blount said that the circuit judges "never" issue a criminal summons for a defendant who fails to appear in court.

Petitioner originally had two failure to appear charges. Trial counsel testified that the "base charge" for one failure to appear was simple possession of marijuana, and the other "base charge" was aggravated assault. He noted that Petitioner was acquitted of the simple possession charge. Trial counsel testified that he was appointed to represent Petitioner on the failure to appear charges. He said that the State dismissed one of the failure to appear charges prior to trial, and Petitioner was thereafter convicted of the remaining count of failure to appear. Trial counsel said that Petitioner was the only witness who testified at trial for the defense. He spoke with Petitioner's prior counsel and decided not to call her to testify. Concerning Petitioner's defense, trial counsel testified:

> The defense at trial was essentially that [Petitioner] did not hear - - our primary defense was that he did not hear Judge Morgan tell him to come back to court on whatever date it was a month or two in advance or a month or two later. One of our primary - - essentially their only evidence was that the transcript that Judge Morgan said, "Hey, come back on this day." However, in that transcript [Petitioner] never actually responds to that in any way saying, "Yes, sir or yes, I hear you" or anything like that. To me it's reasonable that he didn't actually hear that. At the time [Petitioner] testified to and some of the other witnesses potentially corroborated to me recollection that he was talking to the Public Defender's Office when Judge Morgan made that announcement to come back on this date.

Trial counsel testified when Petitioner failed to appear on June 13, 2011, it was for an "appearance" date rather than a trial date or a motions hearing. He said, "Nothing of substance [was] actually set to be heard that day."

Trial counsel testified that Petitioner told him that Petitioner was never served with a criminal summons for the aggravated assault or simple possession charges. Concerning the summons, trial counsel testified:

> Well, I mean, the primary part of the case, the main weight against him was what happened in the prior hearing in front of Judge Morgan. To my knowledge, I know where I practice now and I believe if I recall here, a summons is not necessarily served on a defendant especially not when it's just another appearance date or another date once the case is already underway and once the indictment had already happened. The date where Judge Morgan told him to come back on this date or this is our next date or whatever was an arraignment, an arraignment hearing. I

- 4 -

don't know necessarily that a summons is required or is even part of the normal procedure.

Trial counsel noted that it was brought out at trial that Petitioner never signed anything saying that he had to appear on the court date nor did Petitioner receive any written documentation to be there.

Trial counsel testified that Ronnie Thompson was a co-defendant in Petitioner's case involving marijuana. He acknowledged that Petitioner's girlfriend asked on Petitioner's behalf that Mr. Thompson be called to testify at trial. Trial counsel testified that he did not subpoena Mr. Thompson because Mr. Thompson also failed to appear on June 13, 2011. Trial counsel and Petitioner discussed the matter. Trial counsel said:

> . . . However, it was my opinion and my strategic thinking that if Ronnie Thompson was called, he would simply offer up an excuse as to why he was not there, some sort of kind of almost like an alibi of, you know, I was doing this or that. It would have been a whole different angle than what we were going for in [Petitioner's] case.

On cross-examination, trial counsel agreed that the crime of failure to appear obviously occurs when Defendant does not appear at the hearing. Therefore, regardless of what the clerk's office does or does not do after that, the crime has still been committed. Trial counsel acknowledged that a capias is not a formal charging instrument that entitled Defendant to a preliminary hearing, and there is no obligation on the court to issue a summons or warrant, which is strictly for the judge's discretion. In the present case there was no summons, citation, or warrant issued. The case "was a straight indictment." Trial counsel testified:

> . . . [T]he charge was taken directly to the grand jury. That's where the first charging of this fact of the charge came from. The capias was issued based on his other pending case or cases. He was arrested basically for not complying with the conditions of release.

Trial counsel testified that the trial court issued a capias on June 13, 2011, when Petitioner failed to appear. Trial counsel testified that on the morning of June 13, 2011, Petitioner's previous attorney told the trial court that she expected Petitioner to be in court that morning. For that reason, trial counsel did not call Petitioner's previous counsel to testify at the failure to appear trial.

Petitioner testified that he was not aware of the appearance date on June 13, 2011. He said that his previous trial counsel had informed him that she would be in court on that date to obtain discovery on his aggravated assault case. Petitioner testified: "I even asked [trial counsel] if I needed to be there on that date she said, no, I'm trying to get

discovery and get the disc. There was a video of the man putting his hands on me in the parking lot." Petitioner testified that he became aware of the failure to appear charge when he was arrested. He said:

> My bail bondsman called me on June the 26th and he said that there was a capias arrest warrant out for me. I lived right across the street from him and he said that I don't understand why that you were not served with the indictment because we were not aware that you were indicted on the simple possession charge because nobody even informed the bail bondsman of the charges. Therefore, he told me, he said, "I don't know. I'm going to try to get [this] straightened out." But the next thing I know, the sheriff's car came here about two hours later and [bail bondsman] David Lewis even walked across the street and he told me he was going to try to get this straightened out.

Petitioner testified that he was later acquitted of the simple possession of marijuana charge. He was convicted of the aggravated assault charge. Petitioner testified that he was in the Madison County Jail at the time the Grand Jury returned an indictment against him for failure to appear. Concerning his drug charge, Petitioner testified:

> Yeah. I was never granted an opportunity to respond to the arrest. I was never granted a preliminary hearing. I was never given [a] forfeiture of bail notice. I was never given any notice. After the prosecution got their indictment on June the 6th for the simple possession charge, they failed to notify me properly in accordance with state law and therefore it caused all of this manifestation of injustice. They are certainly aware of it. I mean, [the prosecutor] sat there and said that they are not required to serve me after the indictment when actually state law requires you to.

Petitioner testified that the Circuit Court Clerk's office sent a letter to the wrong address informing him of the simple possession charge. He said that he found the letter in his discovery materials. The letter appeared to be post-marked on June 7, 2011, and was returned to the clerk's office as "not deliverable as addressed." Concerning his defense at trial, Petitioner testified:

> I wanted to put Mr. David Lewis, the bail bondsman, my mother, Ronnie Thompson, Susan Korsnes and he told me he was going to subpoena these people, but he ended up - - I talked to him and he kind of talked about, well, I don't want to do this and that and I said, well, you know, if Ronnie Thompson was not arrested and charged then I certainly have a right to present that defense. You know, and the fact that there was never proper notice given to me.

Petitioner testified that he was not served with a criminal summons after his indictment for simple possession of marijuana which he alleged was required pursuant to Rule 9(a) of the Tennessee Rules of Criminal Procedure.

Petitioner testified that trial counsel had a conflict of interest in Petitioner's case because trial counsel refused to "subpoena the court clerks and her records," and he refused to present Ronnie Thompson as a "plausible defense strategy[.]" Petitioner claimed that the conflict of interest with trial counsel was that "[h]e would not do what I asked him to." Petitioner testified that the trial court was hostile toward trial counsel causing trial counsel to be "timid" and "not assert objections." He said that trial counsel made several objections and had valid points, but the objections were overruled by the trial court. Petitioner claimed that Petitioner was threatened with criminal charges when he asked to address the court and that trial counsel was "dumbfounded" at that point and did not know what to do. Petitioner further testified that trial counsel was not assertive, did not ask the proper questions, and he failed to object to the jury selection process. He said, "[Trial counsel] sat over there and he allowed the jury to be impaneled and he didn't exercise any strikes. He didn't ask me anything about striking anybody."

On cross-examination, Petitioner testified that he appeared in circuit court on May 9, 2011, for the aggravated assault charge. He said that he was not appointed counsel but was asked to "step aside and let the public defender's office sign you up." Petitioner testified that his case was reset for June 13, 2011, but he did not hear that the case was reset. He admitted that he did not appear in court on June 13. Petitioner testified that the State presented evidence of the transcript from the hearing on May 9, 2011, and the testimony of its witnesses. Petitioner agreed that he testified at trial but his testimony was "hindered several times by erroneous objections by the prosecution to testify as to what [previous trial counsel] told me." He also claimed that the State's proof was "misleading." Petitioner admitted that he testified to the jury at trial that he did not hear the court date announced. He also acknowledged that the State presented the transcript from the hearing on June 13, 2011, during which his previous trial counsel told the trial court that she expected Petitioner to be there that day. Petitioner claimed that the State indicted him after his first court appearance and did not notify him of the charge. Petitioner testified that he was arrested on a capias issued by "Ms. Blount" rather than the trial judge.

Upon examination by the post-conviction court, Petitioner testified that he did not hear the trial court inform him of his next court date. He said that he met with previous trial counsel on June 9, 2011, and she did not say that he had to appear on June 13, 2011. He said, "Yes. I even asked her, "Do I need to be there?" [She] said, "No, I'm going to be your representative. I'll be the appearance for you." Petitioner testified that trial counsel told him that she was going to be in court on that date to obtain discovery for the aggravated assault case. He said that previous counsel told him that they would meet again after she received discovery to see if they could obtain a plea agreement. Petitioner

testified that he did not ask previous trial counsel when he had to go back to court on the aggravated assault case.

Trial counsel was recalled as a witness. He testified that he did not speak with Circuit Court Clerk Kathy Blount about whether or not she issued a summons or anything against Petitioner for this case. Trial counsel testified that the trial court denied his motion to dismiss the failure to appear indictment. When asked why he did not pursue the issue on appeal, trial counsel testified:

> That was the motion that [Petitioner] actually filed pro se if I remember correctly. I may have modified it perhaps and filed one myself. I don't remember. I know that he had originally at least sent me one himself and it may have been that one that we filed. At the time, I kind of disagreed with the substance of it. He asked me to present it to the trial court and so we did. We gave it a shot. If I am remembering correctly, the substance or the thrust of that motion was that he should have been given a preliminary hearing. I personally felt in looking at the law on the issue that no preliminary issue was actually required under his circumstances because the charge went straight to the grand jury for an indictment as opposed to some sort of petition with the lower courts or whatever and he was being held on his other charge or charges as opposed to the failure to appear charge.

On cross-examination, trial counsel testified that he was not hampered by the trial court's attitude toward him. He said, "I'd tried other things in this court. It was this very court at the time and it had been - - I never had an issue." Trial counsel further testified: "I mean, most of the procedural motions were against us, yes, but I wouldn't say that that was anything other than just rulings by the Court."

*Analysis*

Petitioner contends that his trial counsel provided ineffective assistance because trial counsel failed to subpoena witnesses requested by Petitioner, did not present evidence that the circuit court clerk's office failed to issue a criminal summons after his failure to appear, and trial counsel allowed himself to be intimidated by the trial court. We disagree.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the [c]onstitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f); *see Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are

bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. *Id*; *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Id.* at 457-58.

Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. *Dellinger*, 279 S.W.3d at 293 (citing U.S. Const. amend. VI; *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688-89. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. *Hellard v. State*, 629 S.W. 2d 4, 9 (Tenn. 1982).

Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

After a hearing, the post-conviction court made specific findings of fact and determined that Petitioner failed to meet his burden of proof and did not prove his

allegations of ineffective assistance of counsel by "clear and convincing evidence." Petitioner's entire argument on appeal concerning ineffective assistance of trial counsel consists of the following:

> In the instant case, Petitioner's attorney, [    ], engaged in actions that constituted deficient performance. [Trial counsel] did not subpoena witnesses requested by Petitioner, did not present evidence that the Clerk's Office failed to issue a criminal summons after his failure to appear, and allowed himself to be intimidated by the trial court. Consequently, Petitioner was deprived of his right to a fair and impartial trial and did not have the opportunity to explain his version of events to the jury.

> [Trial counsel's] actions and omissions resulted in actual prejudice towards the Petitioner. Had [trial counsel] been effective in his representation, the jury would likely have found that Petitioner did not violate the law against failure to appear. In addition, a trial may have had a different result had evidence been submitted regarding the failure of the Clerk's Office to issue a criminal summons to Petitioner after he failed to appear in court on June 13, 2011. [Trial counsel's] errors resulted in Petitioner's conviction and subsequent six (6) year sentence.

First, Petitioner argues that trial counsel failed to subpoena witnesses to testify at trial. Petitioner does not specify in his argument who trial counsel should have called as a witness or what any alleged witnesses would have testified to. "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Petitioner did not present any of these witnesses at the post-conviction hearing. Therefore, Petitioner is not entitled to any relief on this issue.

Next, Petitioner contends that trial counsel did not present evidence that the clerk's office failed to issue a criminal summons after his failure to appear. However, as pointed out by the State, Petitioner has not cited to any authority that requires the circuit court clerk's office to use a criminal summons when a defendant fails to appear in court. Circuit Court Clerk Kathy Blount testified that when a defendant in Madison County Circuit Court fails to appear in court on a specific date, the judge orders a *capias* to be issued by the clerk's office. The capias is then sent to the sheriff's office, and they search for the defendant. Once the defendant is located, he or she is taken into custody and appears before the judge who ordered the capias. Ms. Blount noted that if the defendant is out on bond, a scire facias is issued and sent to the bonding company. Ms. Blount testified that when a defendant is out on bond and indicted by the grand jury, before the arraignment, the clerk's office sends a "courtesy letter" to remind them to appear. The

letter is not required by statute. Ms. Blount said that the circuit judges "never" issue a criminal summons for a defendant who fails to appear in court. Trial counsel testified that a summons was "not necessarily" served on a defendant when it was "just another appearance date or another date once the case is already underway and once the indictment had already happened." Trial counsel also noted that "[t]he date where Judge Morgan told him [to] come back on this date or this is our next date or whatever was an arraignment, an arraignment hearing. I don't know necessarily that a summons is required or is even part of the normal procedure." Petitioner has not proven his claim by clear and convincing evidence. He is not entitled to relief on this issue.

Finally, Petitioner argues that trial counsel allowed himself to be intimidated by the trial court. Petitioner does not explain in any way how trial counsel was intimidated by the trial court or how it affected the outcome of his trial. At the post-conviction hearing, trial counsel testified that he was not hampered by the trial court's attitude toward him. He said, "I'd tried other things in this court. It was this very court at the time and it had been - - I never had an issue." Trial counsel further testified: "I mean, most of the procedural motions were against us, yes, but I wouldn't say that that was anything other than just rulings by the Court." Petitioner is not entitled to relief on this issue.

## CONCLUSION

Petitioner has failed to establish that trial counsel provided ineffective assistance. For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE

- 11 -